UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION,

MDL No. 2036

_____/

THIS DOCUMENT RELATES TO:

*Michael Dasher v. RBC Bank (USA)*;
S.D. Fla. Case No. 1:10-cv-22190-JLK

_____/

## ORDER DENYING MOTION TO COMPEL ARBITRATION

THIS CAUSE comes before the Court upon Defendant RBC Bank's Motion to

Compel Arbitration and Stay all Proceedings (DE # 5 in 09-22190) filed on July 22,

2010.[1]

Currently the Court has ruled on seven (7) previously filed Motions to Compel

Arbitration.  Six were denied (DE # 447 & 595) and one was granted (DE # 514).  This

Court's May 10th Order Denying Motions to Compel Arbitration, June 16th Order

Denying KeyBank's Motion to Compel Arbitration and May 25th Order Granting

Huntington Bank's Motion to Compel Arbitration are incorporated into this Order by

_____

[1] On August 9, 2010, Plaintiff Responded (DE # 751) and on August 19, 2010 Defendant
Replied (DE # 761).

1

reference and the Court will not restate the factual background or legal basis for those Opinions.

In this Order, the Court addresses whether RBC Bank's arbitration provision is valid and enforceable under North Carolina law.[2] The Court finds that the arbitration provision is unconscionable and therefore invalid and unenforceable.

## I. DISCUSSION

This Court considered North Carolina law when evaluating the arbitration provision at issue in *Powell-Perry v. Branch Banking & Trust Company*, S.D. Fla. Case No. 10-cv-20820-JLK. (Order Denying Motions to Compel Arbitration, DE # 447.) In that Order, the Court found that in North Carolina, "[a] party asserting that a contract is unconscionable must prove both procedural and substantive unconscionability." *Tillman v. Commer. Credit Loans, Inc.*, 655 S.E.2d 362, 370 (N.C. 2008) (citing *Martin v. Sheffer*, 403 S.E.2d 555, 557 (N.C. 1991)). Moreover, the unconscionability analysis is fact-intensive, and must be undertaken on a case-by-case basis. *See Bradford v. Rockwell Semiconductor Sys.*, 238 F.3d 549, 556 (4th Cir. 2001) ("We believe that the appropriate inquiry is one that evaluates whether the arbitral forum in a particular case is an adequate and accessible substitute to litigation, i.e., a case-by-case analysis."). With this principle in mind, the Court addresses procedural unconscionability first, followed by substantive unconscionability.

---

[2] Pursuant to RBC Bank's "Personal Accounts Service Agreement" (hereafter "Agreement") North Carolina law governs this issue. The parties do not dispute this.

## A.    Procedural Unconscionability

"[P]rocedural unconscionability involves 'bargaining naughtiness' in the form of unfair surprise, lack of meaningful choice, and an inequality of bargaining power." *Tillman*, 655 S.E.2d at 370.  Although this is a case-by-case inquiry, the North Carolina Supreme Court has identified several factors that are integral to the analysis, including the fact that (i) there was no mention of the disputed provision at the time of signing the contract; (ii) the agreement was presented on a take-it-or-leave-it basis–that is, the bank would have refused to enter the agreement rather than negotiate the terms of the arbitration provision; (iii) there was a disparity in bargaining power and sophistication between the parties; and (iv) the agreement was drafted by the bank and contained mostly boilerplate terms. *Id.*

Here, as in *Powell-Perry*, all of those factors weigh in favor of finding that the arbitration provision is procedurally unconscionable.  First, there was no mention of the arbitration provision at the time of signing.  In fact, the Agreement did not have an arbitration provision at the time of signing.  RBC Bank subsequently modified the Agreement to include an arbitration provision and mailed a notice of this change to Plaintiff, but this provision was not added until ten years *after* Plaintiff opened his account.  Second, as the arbitration provision was not in the original Agreement and the notice of arbitration provision did not provide Plaintiff with the option to opt out, the Agreement was presented on a take-it-or-leave-it basis and Plaintiff had no opportunity to

3

negotiate the terms of the arbitration provision. Third, there is an obvious disparity in bargaining power and sophistication between Plaintiff and RBC Bank: This Agreement did not involve two corporations negotiating the terms of a deal; rather, Plaintiff had neither the knowledge nor the power to understand that he was waiving his right to a judicial forum or to articulate an objection to such a waiver. Finally, the Agreement and subsequent arbitration provision were drafted by RBC Bank and contained 29 pages of double column, single spaced, small print, boilerplate language. Moreover, the arbitration provision was not highlighted in the Agreement in anyway. Taking all of these factors together, the Court determines that Plaintiff has sufficiently demonstrated procedural unconscionability.

**B.    Substantive Unconscionability**

"Substantive unconscionability . . . refers to harsh, one-sided, and oppressive contract terms." *Tillman*, 655 S.E.2d at 370. There is no specific formula for analyzing substantive unconscionability; rather, it is "a determination to be made in light of a variety of factors." *Id.* (quotations and citations omitted). Furthermore, "while the presence of both procedural and substantive problems is necessary for an ultimate finding of unconscionability, such a finding may be appropriate when a contract presents pronounced substantive unfairness and a minimal degree of procedural unfairness, or vice versa." *Id.* In short, an arbitration provision is unenforceable if it precludes plaintiffs from "'effectively vindicating [their] . . . rights in the arbitral forum.'" *Id.* at 371 (quoting

4

*Green Tree Fin.*, 531 U.S. at 90; brackets and ellipses in original). To make this determination, the North Carolina Supreme Court has identified several factors that should be analyzed, including (i) the existence of a class action waiver; (ii) the costs of arbitration, including the costs of appeal; (iii) the amount of a plaintiff's likely damages; (iv) the overall deterrent effect that the combination of these factors has on an attorney who might otherwise take a plaintiff's case; and (v) the general one-sidedness of the provision. *See Tillman*, 655 S.E.2d at 371-73.

Here, an analysis of these factors yields the conclusion that the arbitration provision is substantively unconscionable. First, although there is no class action waiver in the Agreement, the lack of any contractual provision *permitting* class action arbitration creates the same result. *Stolt-Nielsen S.A. v. Animal Feeds Inter. Corp.*, 130 S. Ct. 1758 (2010). In *Stolt-Nielsen*, the United States Supreme Court held that "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so." *Id.* at 1775. In other words, unless the parties explicitly contract for class-action arbitration, the parties cannot engage in class action arbitration. Here, since the Agreement does not discuss class action arbitration, the parties did not agree to submit to class action arbitration. Plaintiff therefore cannot engage in class action arbitration under this Agreement. Plaintiff's right to a class action has thereby effectively been waived by the arbitration clause and Plaintiff must proceed to arbitration as an individual.

With regard to the next three factors, *Tillman* instructs the court to balance the costs of arbitration with any potential recovery to determine the deterrent effect the arbitration provision has on a plaintiff bringing a claim, or the plaintiff's ability to retain an attorney to represent her in the matter. For example, the *Tillman* court, adopting the trial court's findings, described a possible damage award of $4,500 as "so low," noting that it was "unlikely that any attorneys would be willing to accept the risks attendant to pursuing" the claims. *Tillman*, 655 S.E.2d at 371. Here, Plaintiff's potential recovery is small, Plaintiff alleges only $246 in overdraft fees. The high costs of hiring a lawyer and engaging in arbitration will deter Plaintiff from bringing a claim to recover only $246 in damages, nor is that amount large enough to convince an attorney to take this complicated case on a contingency fee basis.[3] Furthermore, the fact that the arbitration provision allows for the arbitrator to award attorney's fees does not guarantee attorney's fees in this instance. The North Carolina statute upon which Plaintiff's statutory claim is based allows the presiding judge to award attorney's fees in his or her discretion if the violation at issue was willful. *See* N.C. Gen. Stat. § 75-16.1. The 11th Circuit, however, held in *Dale v. Comcast Corp.*, that the mere possibility of winning attorney's fees at the end of the case does not provide an adequate incentive for an attorney to take the case. 498 F.3d

---

[3] Plaintiff includes an unsworn Declaration stating that he doesn't "have the disposable income to pay for a lawyer's or arbitrator's fees, the arbitration filing fee, or the costs of discovery." (DE # 751, Ex. 1 at ¶ 12.) Further, Plaintiff attaches an unsworn Declaration of a Florida lawyer, Lawrence Mark Kopelman, that states "In my professional opinion, it would not make practical sense to take this case on an individual basis." (DE # 751, Ex. 5 at ¶ 6.)

1216, 1223 (11th Cir. 2007) ("[T]he potential recovery of attorney's fees and litigation costs under O.C.G.A. § 13-6-11 does not provide the same incentive for an attorney to represent an individual plaintiff as the automatic, or likely, award of fees and costs available to a prevailing plaintiff [in other actions]."). Conversely, in *Snowden v. Checkpoint Check Cashing,* a case the Court discussed in its previous Order, the attorney's fees available under the Truth in Lending Act were mandatory, rather than permissive, providing a greater incentive to a possible attorney. 290 F.3d 631, 639 (4th Cir. 2002); 15 U.S.C. § 1640(a)(3). Thus, the mere possibility of attorney's fees here, as in *Dale*, does not mean a lawyer would agree to pursue a $246 claim. Finally, the arbitration provision itself further complicates matters. It states: "the arbitrator will award the filing and arbitrator fees to the prevailing party." Thus, if Plaintiff loses the arbitration, he will be forced to pay not only his filing and arbitrator fees, but RBC Bank's as well, which could easily exceed the $246 in overdraft fees incurred.[4] In sum, the arbitration provision has the effect of deterring Plaintiff from bringing his claim and vindicating his rights.

Finally, *Tillman* instructs courts to examine the general one-sidedness of the arbitration provision. 655 S.E.2d at 372. Here, as in *Tillman*, the provision does not specifically favor RBC Bank by carving out exceptions for only the Bank. However, as

---

[4] Under new procedures promulgated by the American Arbitration Association ("AAA"), Plaintiff's costs may be limited to $125. Nevertheless, as previously discussed, the Court cannot rely on this assertion.

*Tillman* noted, practically speaking, disallowing class actions always favors the bank, because the bank has no need for the cost-sharing benefits that class actions bring and it serves as a deterrent against customers bringing claims. *Id.* at 373.  Similarly, requiring the losing party to pay the filing and arbitration fees of the prevailing party, benefits the Bank by deterring only the customers from bringing claims.  Moreover, under the Agreement the arbitrator may require the party seeking discovery to pay, on a current basis, all of the costs associated with the discovery sought.  Again, while this sum of money would not deter a large, financial institution, it may deter a customer bringing a claim for only $246 in damages.  Finally, whereas the North Carolina Unfair and Deceptive Trade Practices Act has a four year statute of limitations, the Bank's arbitration provision limits the statute of limitations for all claims brought under the Agreement to one-year.  The arbitration provision therefore significantly minimizes the scope of the Bank's potential financial responsibility to account holders and thereby favors the bank. This general one-sidedness contributes to the overall conclusion that the provision is substantively unconscionable.

## II. CONCLUSION

In sum, after a careful weighing of all the relevant factors, the Court determines that RBC Bank's arbitration provision is both procedurally and substantively unconscionable, and therefore unenforceable.

Accordingly, after a careful review of the record, and the Court being otherwise

fully advised, it is ORDERED, ADJUDGED and DECREED that Defendant RBC Bank's

Motion to Compel Arbitration (**DE # 5**) be, and the same is hereby, **DENIED**.

DONE and ORDERED in chambers at the James Lawrence King Federal

Courthouse in Miami, Florida, this 23rd day of August, 2010.

JAMES LAWRENCE KING
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF FLORIDA

cc:   All Counsel of Record